UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEMERIA BESHIR, | : | |
| Plaintiff, | : | Civil Action No.: 10-652 (RMU) |
| v. | : | Re Document No.: 2 |
| ERIC HOLDER, II, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

DENYING THE DEFENDANTS' MOTION TO DISMISS; DENYING WITHOUT PREJUDICE THE
DEFENDANTS' MOTION IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff, an asylee from Ethiopia, commenced this action seeking an order compelling the defendants[1] to rule on her application to adjust her immigration status from asylee to that of a permanent resident. Since April 2008, the U.S. Citizenship and Immigration Services ("USCIS") has held in abeyance the plaintiff's request for reconsideration of her application, pursuant to a USCIS policy to withhold such decisions for certain categories of individuals whose applications involve terrorism-related grounds for inadmissibility. The matter is now before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment. For the following reasons, the court denies the defendants' motion to dismiss and denies without prejudice the defendants' motion in the alternative for summary judgment.

---

[1] The defendants in this case are Eric H. Holder, II, the Attorney General of the United States; Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"); Robert S. Mueller, III, Director of the Federal Bureau of Investigation ("FBI"); Alejandro Mayorkas, Director of U.S. Citizenship and Immigration Services ("USCIS"); Lauren Kilesmeier, Acting Deputy Director of USCIS; Lori Scialabba, Associate Director of Refugee, Asylum and International Operations, USCIS; and Donald Neufeld, Acting Associate Director of Domestic Operations, USCIS.

## II. BACKGROUND

### A. Statutory Framework

Under the Immigration and Nationality Act ("INA"), the Secretary of the Department of Homeland Security ("DHS") may, "in [her] discretion and under such regulations as [she] may prescribe," adjust the immigration status of an asylee who, among other statutory criteria, qualifies as an "admissible" alien "at the time of examination for adjustment." 8 U.S.C. § 1159(b). Stated otherwise, the Secretary has the discretionary authority to allow an asylee to become a permanent resident if she deems that individual admissible.

One reason why an alien may be deemed inadmissible is if he or she has "engaged in terrorist activity" by providing "material support" to a "terrorist organization" ("material support bar"). *Id*. § 1182(a)(3)(B)(i)(I) (providing that "[a]ny alien who has engaged in terrorist activity" is inadmissible); *id*. § 1182(a)(3)(B)(iv)(VI) (defining "terrorist activity" to include providing material support to a terrorist organization). For purposes of this provision, terrorist organizations include both those organizations designated by the INA or certain U.S. officials, *id*. § 1182(a)(3)(B)(vi)(I)-(II), and "undesignated" organizations, known as Tier III organizations, *id*. § 1182(a)(3)(B)(vi)(III).

In 2008, Congress amended the INA to provide the Secretary with the discretionary authority to decide that the material support bar would not apply to an individual alien and to determine that an particular group would not constitute an "undesignated terrorist organization" under § 1182(a)(3)(B)(vi)(III). *See id*. § 1182(d)(3)(B)(i). In light of this new discretionary authority, USCIS issued a policy memorandum on March 26, 2008 instructing USCIS adjudicators to reopen and place "on hold" any case that had been denied on or after December 26, 2007 (the effective date of the relevant INA amendment) "in which the only ground(s) for

referral or denial [was] a terrorist-related inadmissibility provision(s) and the applicant falls within one or more of [five] categories." Compl., Ex. Q ("March 2008 Policy Memorandum") at 2. The second category delineated in the memorandum, and the only one relevant here, concerns "[a]pplicants who are inadmissible under the terrorism-related provisions of the INA based on any activity or association that was *not under duress* relating to any other Tier III organization." *Id.*

On February 13, 2009, USCIS issued another memorandum to its field offices, revising the guidelines for the adjudication of cases involving terrorist-related inadmissibility grounds. *See generally* Compl., Ex. P ("February 2009 Policy Memorandum"). Although this memorandum "modifies the hold guidance to allow for certain cases to be elevated for a determination as to whether the hold should be lifted," *id.* at 1, it expressly requires that adjudicators hold in abeyance, "pending further instruction," any case in which the applicant is "inadmissible under the terrorist-related provisions of the INA based on any activity or association that was *not under duress* relating to any Tier III organization, other than those for which an exemption currently exists," [2] *id.* at 2. The memorandum provides that

> [i]f the adjudicating office receives a request from the beneficiary and/or attorney of record to adjudicate a case on hold per this policy (including the filing of a mandamus action in federal court) . . . the case should be elevated through the chain of command to appropriate Headquarters personnel. Guidance will be provided by USCIS headquarters on whether or not the case should be adjudicated. . . Adjudicators will receive additional guidance on continued or lifted holds on these cases as decisions are reached at the [Department of Homeland Security] level.

*Id.* at 3.

---

[2] As discussed below, the terrorist organization at issue here is the Oromo Liberation Front ("OLF"). OLF was not, however, listed as an exempted group in the February 2009 Memorandum. February 2009 Policy Memorandum at 2, n.3.

Normally, decisions on immigration applications are withheld under the procedures outlined in 8 C.F.R. § 103.2(b)(18). Under those procedures, the district director[3] "may authorize withholding adjudication [of an immigration application] if [he or she] determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion." 8 C.F.R. § 103.2(b)(18). If, however, the investigation takes longer than one year to complete, the regulation provides that a district director

> shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

*Id.*

## B. Factual & Procedural History

The plaintiff, a citizen of Ethiopia, came to the United States in 2002 on a visitor visa. Compl. ¶ 13. She subsequently applied for and was granted asylum on March 26, 2003. *Id.* On May 3, 2004, the plaintiff applied to adjust her status to a permanent resident. *Id.*; Defs.' Statement of Material Facts Not in Dispute ("Defs.' Statement") ¶¶ 1-2.

On February 28, 2008, USCIS notified the plaintiff that her application for adjustment of status had been denied. *See generally* Compl., Ex. B ("February 2008 Letter"). This decision

---

[3] The term "district director" generally refers to a USCIS official or another authorized DHS official. *See* 8 C.F.R. § 1.1(o).

was based on statements made by the plaintiff in her asylum application reporting that, while living in Ethiopia, she had provided material support to a group known as the Oromo Liberation Front ("OLF"). *Id.* at 3; Defs.' Mot. for Summ. J. ("Defs.' Mot."), Martin Decl. ¶¶ 10-11. According to USCIS, the OLF met "the current definition of an undesignated terrorist organization" as set forth in the INA. February 2008 Letter at 3. Because the plaintiff's "acts of material support of the OLF were voluntary," USCIS determined that the plaintiff was inadmissible under the INA's material support bar and denied her application for adjustment. *Id.*

USCIS granted the plaintiff's request to reopen her application on April 30, 2008, but advised her that her case would be "placed on hold" because the record was insufficient "to establish eligibility for the benefit sought." Compl., Ex. I at 1. Since that time, the plaintiff has inquired as to the status of her application on multiple occasions, but USCIS has consistently responded that her application "is still currently on hold" at the processing center. Compl. ¶ 23; *see also* Defs.' Mot. at 11. On January 31, 2010, the plaintiff sent USCIS a letter requesting adjudication of her application. Compl. ¶ 27; Defs.' Mot. at 11. Notwithstanding these efforts, the plaintiff has not yet received a disposition on her application. Compl. ¶ 34; Defs.' Mot. at 10-11.

The defendants state that the delay in adjudication is the result of "evidence of terrorism-related inadmissibility in [the plaintiff's] application and the extended processing required." Defs.' Mot. at 3. USCIS claims that the plaintiff's "application remains on hold in accordance with agency policy pending future exemption-related guidance," *id.* at 4, and "pursuant to the applicable policy memoranda governing terrorism-related inadmissibility," Defs.' Reply at 2.

On April 27, 2010, the plaintiff commenced this action seeking an order "compel[ling] Defendants and those acting under them to perform their duty to adjudicate" the plaintiff's

5

application for adjustment of status. Compl. ¶ 41. The plaintiff seeks this relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 555[4]; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* ¶¶ 1, 37. The defendants have moved to dismiss, or in the alternative, for summary judgment, arguing primarily that the court lacks subject matter jurisdiction. *See generally* Defs.' Mot. With this motion now ripe for adjudication, the court turns to the applicable legal standard and the parties' arguments.

## III. ANALYSIS

### A. The Court Denies the Defendants' Motion to Dismiss

#### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the

---

[4] Under 5 U.S.C. § 555(e), "[p]rompt notice shall be given of the denial in whole or in part of a written application . . . of an interested person made in connection with any agency proceeding." 5 U.S.C. § 555(e).

burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### 2. The INA Does Not Deprive the Court of Subject Matter Jurisdiction

The defendants argue that "[u]nder the jurisdiction-stripping provisions of the INA, this [c]ourt lacks jurisdiction over Plaintiff's claims seeking to compel USCIS to adjudicate her application." Defs.' Mot. at 10. More specifically, they submit that the INA "remove[s] from judicial review any 'other decision or action . . . the authority for which is specified to be in the discretion of the Attorney General or the Secretary.'" *Id.* (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). The defendants maintain that because "the adjudication of an adjustment of status application is a discretionary action and decision," the provision "divests this [c]ourt of subject matter jurisdiction over [the p]laintiff's claim." *Id.* at 11.

7

The plaintiff responds that the jurisdiction-stripping provision of the INA applies only to a "decision or action," and therefore does not apply here because "[t]he Secretary and [d]efendants have not 'acted' on [her] application since re-opening and putting it on hold two-and-a-half years ago." Pl.'s Opp'n at 16-17. Although the plaintiff concedes that "[t]he Secretary's decision to hold [her] application in abeyance pending review for possible exemptions to the material support bar was an 'act,'" the plaintiff maintains that the defendants' subsequent failure to process her request for adjudication constitutes inactivity that is reviewable by the court. *Id.* at 17. The plaintiff also argues that defendants have not "acted" because they failed to demonstrate that they had followed the regulatory steps governing the withholding of adjudication for immigration applications. *Id.* at 17-18. The plaintiff urges the court to adopt the reasoning articulated in *Liu v. Novak*, 509 F. Supp. 2d 1 (D.D.C. 2007), in which the court held that the INA's jurisdiction stripping provision should be read narrowly so as to not strip the court's jurisdiction to review the Secretary's inaction in processing an adjustment of status claim. *Id*. at 19-20.

> The jurisdiction-stripping provision of the INA states in relevant part that
>
> [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under 1158(a)[5] of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

---

[5] Section 1158(a) concerns applications for asylum. 8 U.S.C. § 1152(a).

Accordingly, this provision strips the court of jurisdiction to review the plaintiff's claim if (1) the holding of the plaintiff's application in abeyance is a matter within the Secretary's discretion; (2) the discretion exercised by the Secretary is one that is "specified under this subchapter;" and (3) the specified discretion is a "decision or action" as that term is used in the INA. *See id.*; *Singh v. Napolitano*, 710 F. Supp. 2d 123, 129 (D.D.C. 2010) (outlining requirements of 8 U.S.C. 1252(a)(2)(B)(ii)). Because, however, there exists a "presumption favoring interpretation of statutes [to] allow judicial review of administrative action," *Kucana v. Holder*, 130 S. Ct. 827, 831 (2010) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63-64 (1993)), the defendants must show by clear and convincing evidence that Congress intended to divest this court of jurisdiction over the matter at issue, *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin. Inc.*, 502 U.S. 32, 44 (1991) (stating that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review" (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967))).

In *Kucana v. Holder*, the Supreme Court explored the meaning of the phrase "specified under this subchapter" in the context of § 1252(a)(2)(B)(ii). 130 S. Ct. 827. The issue in *Kucana* was whether § 1252(a)(2)(B)(ii) stripped the court of jurisdiction to review a Board of Immigration Appeals ("BIA") decision denying a petitioner's motion to reopen his removal proceedings. *Id.* at 831. The Seventh Circuit had concluded that pursuant to § 1252(a)(2)(B)(ii) the court lacked jurisdiction over the petitioner's claim because the BIA had acted under its discretionary authority, as provided by the Attorney General through a regulation. *Id.* at 833. The Supreme Court reversed, holding that § 1252(a)(2)(B)(ii) did not deprive the courts of jurisdiction to review the BIA's denial where the BIA's discretionary authority was not

9

"specified by statute," but rather was found in a regulation promulgated by the Attorney General. *Id*. at 839-40.

In so deciding, the Supreme Court observed that "§ 1252(a)(2)(B)(ii)[] speaks of authority 'specified' – not merely assumed or contemplated – to be in the [Attorney General or Secretary's] discretion," *id*. at 834 n.10, and interpreted the jurisdiction-stripping provision to "convey that Congress barred court review of discretionary authority only when Congress itself set out the [Attorney General or Secretary's] discretionary authority in the statute," *id*. at 837. The Court also noted that § 1252(a)(2)(B)(ii) must be read in context with the preceding provision, § 1252(a)(2)(B)(i), which strips the court of jurisdiction to review substantive decisions, such as "things that involve whether aliens can stay in the country or not." *Id*. at 838. The Court explained that decisions "shielded from court oversight by § 1252(a)(2)(B)(ii)[] are of a like kind." *Id*. As such, the Court concluded that jurisdiction is not stripped for a court to review a motion to reopen a removal proceeding because "[a] court decision reversing the denial of a motion to reopen does not direct the Executive to afford the alien substantive relief." *Id.* Instead, a decision on a motion to reopen is an "adjunct ruling," *i.e.*, "a procedural device serving to ensure that aliens are getting a fair chance to have their claims heard." *Id.* (internal citations omitted).

Here, although the Secretary clearly has discretionary authority to adjudicate the plaintiff's adjustment of status, *see* 8 U.S.C. § 1159(b), the INA does not provide the Secretary the discretionary authority to withhold a decision indefinitely, *see, e.g., Bondarenko v. Chertoff*, 2007 WL 2693642, at *4 (W.D.N.Y. Sept. 11, 2007) (noting that the INA provides the Attorney General with discretion to adjust an applicant's status but "says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition

languish indefinitely") (internal quotations and citation omitted)); *Al Kurdy v. U.S. Citizenship Immigration Servs.*, 2008 WL 151277, at *4 (D. Neb. Jan. 10, 2008) (observing that the agency's discretion under an analogous statute "occurs after a decision has been made, not whether the agency can choose not to make a decision or can choose to unreasonably delay a decision"). Thus, the court rejects the defendants' suggestion that the INA provides the Secretary the authority to hold the plaintiff's application in abeyance indefinitely.[6] Because the Secretary's discretionary authority to withhold adjustment applications is not "specified under the subchapter," the court concludes that its jurisdiction is not barred by the INA's jurisdiction-stripping provision.[7] *See Kucona*, 130 S. Ct. at 839 (noting that "[a]ny lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) would be dispelled by . . . the presumption favoring judicial review of administrative action").

### 3. Legal Standard for Jurisdiction Under the APA

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v.*

---

[6] Although the defendants may suggest that the Secretary's discretionary authority to hold the plaintiff's application in abeyance is implied in the Secretary's statutory authority to promulgate regulations governing the adjudication of adjustment of status applications for asylees, *see* 8 U.S.C. § 1159(b), *Kucana* made clear that such implied discretionary authority is insufficient, *Kucana*, 130 S. Ct. at 834 n.9 (indicating that "[s]pecified is not synonymous with 'implied' or 'anticipated'"); *see also Liu*, 509 F. Supp. 2d at 7 (D.D.C. 2007) (holding that § 1252(a)(2)(B)(ii) only applies to the "narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary's] discretion" (quoting *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006)).

[7] Having determined that the Secretary's discretion is not "specified under the subchapter," the court does not reach the two remaining elements of 8 U.S.C. § 1252(a)(2)(B)(ii).

*Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). A court may not review an agency action, however, where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). The APA's ban on judicial review of such actions is jurisdictional. *Balt. Gas & Elec. Co. v. Fed. Energy Regulatory Comm'n*, 252 F.3d 456, 459 (D.C. Cir. 2001) (holding that "[t]he ban on judicial review of actions 'committed to agency discretion by law' is jurisdictional"); *Patent Office Prof'l Ass'n v. Fed. Labor Relations Auth.*, 128 F.3d 751, 753 (D.C. Cir. 1997) (noting that the APA provides no jurisdiction when "statutes preclude judicial review").

"Agency action," for purposes of the APA includes, an agency's "failure to act." 5 U.S.C. § 551(13); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62, (2004) (stating that the "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed"). Although the court may act under the APA if an agency fails to make "some decision by a statutory deadline," *Norton*, 542 U.S. at 63, its authority is limited to compelling the agency "to take a *discrete* agency action that it is *required to take*," *id.* at 64 (emphasis in original). And, when the court is justified in acting, its order must be limited to directing the agency to "perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *Id.*

Finally, while the APA alone does not provide a jurisdictional basis for this court to review administrative action (or inaction), jurisdiction is appropriate when the APA is considered together with 28 U.S.C. § 1331, which provides jurisdiction over "all civil actions arising under the . . . laws . . . of the United States." *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

12

### 4. The Court Has Jurisdiction Under the APA & 28 U.S.C. § 1331

The defendants argue that the decision to hold the plaintiff's application in abeyance is a discretionary matter over which the court lacks jurisdiction. Defs.' Mot. at 10. More specifically, the defendants submit that the INA does not provide a "mandatory time frame for the adjudication of asylee adjustment applications." *Id*. at 12. The defendants thus conclude that the Secretary "has the discretion to fashion her own rules of procedure and to pursue methods of inquiry capable of permitting her to discharge her 'multitudinous duties.'" *Id*. (quoting *Singh*, 710 F. Supp. 2d at 130). In response, the plaintiff broadly asserts that the court has jurisdiction under the APA because the defendants have unreasonably delayed the adjudication of the plaintiff's application. Pl.'s Mot. at 20-21.

Although the Secretary indisputably has discretion to decide whether to adjust the status of an asylee who, like the plaintiff, has been deemed inadmissible due to terrorist-support grounds, *see* 8 U.S.C. 1159(b) (giving the Secretary discretion to adjust the status of an asylee); *id*. § 1182(d)(3)(B)(i) (providing the Secretary with the "sole unreviewable discretion," to determine that the material support bar "shall not apply with respect to an alien"), it is less evident that any statute provides the Secretary with unbridled discretion to *withhold* such a decision. Section 1159(b) provides that the Secretary may, in her "discretion *and under such regulations as [she] may prescribe*," adjust the status of an asylee so long as the asylee meets certain criteria. 8 U.S.C. § 1159(b) (emphasis added).

As noted earlier, *see supra* Part II.A, under 8 C.F.R. § 103.2(b)(18), a district director "may authorize withholding adjudication [of an immigration application] if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion." If, however, the investigation takes longer than one year to complete,

the regulation specifies that a district director "shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner." 8 C.F.R. § 103.2(b)(18). After this point, the regulation sets forth a review process whereby every six months a USCIS official is required to affirmatively decide that the application should remain in abeyance. *See id*.

The defendants provide no reason for why § 103.2(b)(18) is inapplicable to the Secretary's decision to withhold the plaintiff's application for adjustment of status. *See generally* Def.'s Mot. Nor do the cases relied upon by the defendants analyze the significance of the regulation.[8] Instead, the defendants' argument appears to suggest that the court lacks jurisdiction to review the Secretary's compliance with the regulation since the promulgation of the regulation was itself a discretionary act. Defs.' Mot. at 12.

A court has jurisdiction to review whether an agency's conduct violates regulations promulgated pursuant to an agency's discretion if the regulations are "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered

---

[8] In *Orlov v. Howard*, the court was asked to review the *delay* in adjudicating the plaintiff's adjustment of status application. 523 F. Supp. 2d 30, 34-36 (D.D.C. 2007). The court determined that "[n]either 28 U.S.C. § 1331 nor the [APA] confer[red] jurisdiction upon [it] to review" the delay in adjudication of the plaintiff's adjustment of status application because there were "no statutory guidelines compelling USCIS to adjudicate adjustment of status applications within a certain period of time." *Id*. at 36. Thus, the *Orlov* court held that the "plaintiff plainly [could not] assert that USCIS ha[d] failed to adjudicate his application within a time period in which it was *required* to do so." *Id.* (emphasis original). Here, by contrast, the Regulation provides the court with a "meaningful standard" against which to review the defendants' action or lack thereof. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (stating that judicial review "is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). Thus, the *Orlov* case is inapposite here. Similarly, the second case relied upon by the defendants, *Singh v. Napolitano*, relies wholly on *Orlov*'s reasoning and does not address the applicability of 8 C.F.R. § 103.2(b)(18) to USCIS's decision to hold in abeyance an immigrant's adjustment of status application. *See Singh v. Napolitano*, 710 F. Supp. 2d 123, 130 (D.D.C. 2010).

discretion." *Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 247 (D.C. Cir. 2003) (distinguishing "between procedural rules benefitting the agency . . . and procedural rules benefitting the party otherwise left unprotected by agency rules" when reviewing regulations left to the discretion of an agency). Section 103.2(b)(18) provides important procedural safeguards to an alien who is under investigation and who is awaiting a decision on an immigration application. *See* 8 C.F.R. § 103.2(b)(18). Thus, even though the Secretary's discretion may have implicitly included the ability to fashion procedural regulations governing the withholding of a decision on the plaintiff's application, those regulations, once promulgated, must be followed. *See Lopez*, 318 F.3d at 247. Accordingly, the court concludes that it has jurisdiction to review whether the defendants violated the procedures outlined in 8 C.F.R. § 103.2(b)(18) throughout the period that the plaintiff's application for adjustment of status has been held in abeyance. *See id*. at 247-48 (providing judicial review where the regulations at issue were "not primarily intended to provide [a benefit] to the agency, but [were] instead aimed at protecting the [plaintiff] from the [agency's] otherwise unlimited discretion"); *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1167 (N.D. Cal. 2007) (holding that jurisdiction exists under the APA to compel DHS to comply with their non-discretionary duty as laid out in 8 C.F.R. § 103.2(B)(18)).

**B. The Court Denies Without Prejudice The Defendants' Motion for Summary Judgment**

Normally, at this juncture, the court would proceed to the defendants' motion in the alternative for summary judgment. *See* Defs.' Mot. at 15 (requesting dismissal or alternatively that the court grant summary judgment on their behalf). In their motion for summary judgment, however, the defendants make no mention of 8 C.F.R. § 103.2(b)(18), and, instead, solely argue that the court should review the defendants' actions under the six-part test articulated in *Telecomm, Research & Action Ctr. v. Fed. Commc'n Comm'n.*, 750 F.2d 70, 80 (D.C. Cir.

1984), which governs the court's analysis of the unreasonableness of an agency's delay to take action. *See generally* Defs.' Mot. Because the court cannot grant summary judgment without properly considering how the defendants' actions complied with the regulation, and because there are no facts or arguments which would allow for such review, the court denies without prejudice the defendant's motion for summary judgment and grants leave to the defendants to submit a renewed motion for summary judgment addressing these issues.

### IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss and denies without prejudice the defendants' motion in the alternative for summary judgment. The court grants leave to the defendants to submit a renewed motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of January, 2011.

RICARDO M. URBINA  
United States District Judge